The State v. Lewis.

The STATE, *Appellant*, v. LEWIS.

1. **Murder**: PASSION. The passion which will deprive a homicide of the element of deliberation, and thereby reduce it below the gr of murder of the first degree, may result from some cause sho. what is known as lawful provocation. See *The State v. Charles Et ante*, 207.

2. ———: PREMEDITATION. Premeditation is an essential element of murder in the second degree.

3. **Continuance**. Under the circumstances of this case, the trial court committed error in refusing the continuance prayed by defendant. SHERWOOD C. J., and NORTON, J., dissenting.

*Appeal from St. Louis Court of Appeals.*

AFFIRMED.

*D. H. McIntyre*, Attorney General, for the State.

*C. O. Bishop* and *A. N. Merrick* for respondent.

RAY, J.—The defendant was indicted and convicted of murder in the first degree in the St. Louis criminal court, from which he appealed to the St. Louis court of appeals, where the judgment of the criminal court was reversed and the cause remanded, on the ground of error in overruling his application for a continuance, and from this reversal, in the court of appeals, the State brings the case

here by appeal. The case is not yet reported, but the opinion of the court of appeals was delivered at its October term, 1880, when the facts were fully stated. This opinion of the court of appeals appears to us both just and well considered, and disposes of the several questions therein discussed in an able, clear and satisfactory manner, and we deem it wholly unnecessary for us to restate the matter or undertake to add anything thereto.

One or two questions, however, have been pressed upon our attention which were not passed upon by the court of appeals, and which (as the case must go back to the criminal court for retrial for the reasons assigned by the court of appeals) we deem it proper, briefly, to notice. It is insisted that the definition of the term "deliberately" and the instruction given on murder in the second degree, as found in this record, are calculated to mislead and do not state the law correctly. That definition and instruction are as follows: 1. By the term "deliberately" is meant in a cool state of the blood, not in that heated state which the law denominates "passion;" and the passion here meant is not that which comes of no cause, but that and only that which is produced by some legal provocation. 2. And if, from the evidence, you find that the defendant actually did the killing complained of, and find that it was not done deliberately, or if deliberately, not premeditatedly, and that it was done at the city of St. Louis and in the manner and by the means alleged in the indictment, then you ought not to convict him of murder in the first, but ought to convict him of murder in the second degree.

These instructions are not in harmony with the definitions and doctrine on these subjects, as laid down in a number of recent decisions of this court. *State v. Wieners*, 66 Mo. 13; *State v. Curtis*, 70 Mo. 594; *State v. Sharp*, 71 Mo. 218; *State v. Simms*, 71 Mo. 538; *State v. Robinson*, 73 Mo. 306. The phrase "heat of passion," as used in the above authorities, in this connection, is not used in its tech-

nical sense, but to denote a condition of mind contra-distinguished from that cool state of the blood implied in the use of the term "deliberation," and the "passion" there referred to is not limited to that heated state which comes from and is produced *only* by some legal provocation, as seems to be stated in the latter part of the above definition in this case, which we think somewhat faulty and calculated to mislead. According to all the authorities above cited, "premeditation" is an essential element of every murder in the second degree. The above instruction on that subject in this case it would seem allows a conviction without that ingredient. That is not the law. In the recent case of the *State v. Robinson, supra,* this court passed upon an instruction substantially like this, and expressly held that there could be no murder in the second degree without premeditation. This case also recognizes an excited state of the mind produced by a cause short of what is known as lawful provocation, as an element in determining whether the murder is of the first or second degree. The judgment of the court of appeals reversing the judgment of the criminal court and remanding the cause, is, therefore, affirmed. All the other judges concur except Norton, J., and Sherwood, C. J., who dissent.

Henry, J., Concurring.—I fully concur in the opinion delivered by Judge Ray. Never before, to my knowledge, was one indicted for murder required to get ready for his trial within the short period of four days, one of which was the Lord's day. It was shown by the affidavit and was otherwise known to the court that the defendant's witnesses resided in another county. That other continuances were granted and trial had, was not a sufficient reason for the short time given the accused. When a trial is had or a continuance is granted and the witnesses discharged, they are not required to remain until the next term of the court,

His affidavit for a continuance contained all the formal allegations required by law, and among others, the follow-

ing statement:   Affiant further says that on or about April, 1879, he was made acquainted with T. L. Grasty by his former counsel; that said Grasty then and there undertook the conduct and management of affiant's cause, the said former counsel then and there declining further to act in affiant's behalf; that said Grasty subsequent to the April aforesaid has had entire control and management of affiant's case; but never asked this affiant what witnesses he had in his own behalf, nor what he, affiant, expected to prove by them; that the said Grasty called occasionally at the "screen" in the jail, but never sought to ask of this affiant any information of or concerning this cause; but at such times made application for money, stating at such times that he, said Grasty, would get this affiant out of his trouble for the sum of $200; that at the time that said Grasty took control of affiant's cause, as aforesaid, the said Grasty was informed by affiant and his former attorney that he, said affiant, had no means to employ an attorney, and that at such time, when money was demanded of him, he, the said affiant, would have complied with the demand of his first attorney if he had been able to do so, which he was not, as said Grasty well knew; that subsequently and in June, 1879, the said Grasty directed the affiant to make application to Father O'Shea for money to procure the depositions of witnesses in Washington, Missouri, which affiant did; and affiant further says, that he did so apply to said Father O'Shea, and that he was subsequently informed by Father O'Shea, that he, said O'Shea, did furnish said Grasty with money for that purpose, and that for this reason he had cause to believe, and did believe, that said depositions would be taken in his behalf in time to be used on the trial of said cause.   Affiant further says that he has been informed by his present attorneys, and so believes that no depositions have been taken and on file in his behalf' and that said Grasty did not take any depositions in this cause in affiant's behalf.   And affiant further says that he furnished the said Grasty with the names of the witnesses

hereinbefore named at four different times, previous to the 18th day of November, 1879, and asked him, the said Grasty, to subpœna the said witnesses in time for the said trial. And affiant further says that he is informed, and now believes, that the said Grasty has never, at any time, caused any witnesses to be summoned in this cause in behalf of the defendant, and that he has become possessed of such knowledge since his present attorneys have had charge of his (affiant's) case, and affiant further says, that for the period of two weeks, next preceding the 18th day of November aforesaid, he did not see or have any conversation with his said attorney, Grasty, but did believe that said Grasty had or would do all things necessary and proper to be done in and about his case for his legal and proper defense; and affiant further says that he was first informed by the public press that he was expected to plead guilty to the charge of murder in the second degree, and that the first information he had from the said Grasty, that affiant was expected to so plead was made to him by said Grasty on the said 18th day of November, the day his case was set for trial, and that then the said Grasty came over to the prisoners' box in the criminal court and said: "Matt, you have got to enter a plea," that he, affiant, then asked said Grasty if he, affiant, was going to have a trial, to which said Grasty replied "no;" and affiant says that he is advised by his present counsel, and verily believes, that the testimony of said absent witnesses can and will be procured by the next term of this honorable court, should a continuance be granted, and that the probability of procuring such testimony is based upon the fact that said witnesses are all friends of affiant, and have signified their willingness to attend if notified in time, or to give their depositions when requested so to do.

It thus appears that his attorney betrayed him, and the court appointed others to defend him, and set the cause for trial on the fourth day after the appointment. The newly appointed attorneys knew nothing of the case, and

were not notified of their appointment until the day after it was made, which left them but three days for the preparation, one of which was a Sunday, and yet the court refused further time, although subpœnas, promptly issued and placed in the hands of the sheriff, were not returned, the court well knowing, from the affidavit and otherwise, that the desired witnesses resided in Franklin county.

Lewis is an ignorant colored man and has been confined in the St. Louis jail ever since the homicide of which he is accused was committed. He is without money and without friends, except a humane Catholic priest, who has taken an interest in his case and furnished him money to take depositions, which was appropriated to his own use by defendant's former counsel. He literally had no opportunity to prepare for the trial which resulted in his conviction, and it would be a reproach to our criminal jurisprudence if the judgment were permitted to stand. He made every effort possible after his betrayal by his attorney occurred, and before that had, through the charity of the priest, placed money in the hands of said attorney to pay the expenses of getting depositions, and swears that he supposed the depositions had been taken. His affidavit is to be taken as true, and admitting the facts alleged by him, I think that gross injustice was done him in refusing him a continuance. It may be that he is guilty and should be hanged, but, if hanged without law and before he has had a fair trial, it will not be with my sanction. Whatever others may think, in my judgment it were better that one hundred guilty men should escape punishment, than that this court should sustain a conviction obtained as this one was. No one charged with a crime would be safe, if the trial courts could arbitrarily force him into a trial without preparation or opportunity to prepare for his defense. Speedy trials and prompt execution of the judgment of the courts are desirable, but when these are obtained by a disregard of well established principles of law, neither life, liberty nor property is any longer secure.

NORTON, J., DISSENTING.—No rule is more firmly established in this State than that this court will not reverse a judgment of the trial court upon the ground that it refused to grant a continuance unless it appears that such court has manifestly abused its discretion in refusing it. The indictment on which defendant was tried was found in March, 1879, (it having superceded an indictment found in 1876,) and he was put upon his trial the 24th of November, 1879. Although the cause had been set for trial on the 9th of June, 1879, and continued by consent until the July term of the court, and again on the 25th of July by consent, and again on the 27th of October by the court on its motion, for want of time to try it; and again postponed on the 19th of November from the 18th to the 24th of November, (an application for continuance having been overruled on the 18th, and also a supplemental application on the 19th,) the record fails to show that any steps had been taken to procure the depositions of defendant's witnesses or that any subpœnas had been issued for them till the 21st day of November, three days before the case was tried. The affidavit made on the 24th of November for a further continuance does not, in my opinion, disclose such diligence on the part of the defendant to procure the attendance of his witnesses who resided in the neighboring town of Washington, as the law under the circumstances of the case required, or such as made it the duty of the court to grant the continuance. In this view SHERWOOD, C. J., concurs.