The State v. Turlington.

THE STATE V. TURLINGTON, *Appellant.*

DIVISION TWO.

1. **Criminal Law: MURDER: INDICTMENT.** The insertion of an unnecessary word in an indictment for murder thereby impairing its grammatical or rhetorical correctness will not vitiate it where the meaning of the charge remains clear and unchanged.

2. **Criminal Practice: CHARGE TO GRAND JURY.** It is improper for a judge in his charge to the grand jury to express his opinion on the guilt or innocence of a person accused of crime which is to be investigated; but a conviction will not be disturbed for error in this respect where it appears that, taking the whole charge together, the defendant was not prejudiced by the remarks of the judge.

3. **Grand Jurors, Objection to Competency of.** Objections to the competency of grand jurors must be interposed before the jury is sworn. ( R. S. 1889, secs. 4067-8.)

4. **Criminal Practice: CHANGE OF VENUE, APPLICATION FOR.** While the right to a change of venue in a criminal case is absolute and does not rest in judicial discretion, yet the defendant's application must conform to the terms of the statute and be supported by the affidavit of at least two credible and disinterested witnesses.

5. ——: ——: **CHANGE ON COURT'S OWN MOTION.** It is discretionary with the court to order a change of venue on its own motion and without an application therefor founded on the proviso in section 4156, Revised Statutes, 1889.

6. **Criminal Law: INSANITY OF ACCUSED.** Where insanity of the accused is relied on as a defense, the question for determination is whether the defendant was capable of distinguishing between right

and wrong as to the act about to be committed, and not whether he was the victim of an uncontrollable impulse to do wrong.

7.    —— : —— : CONTINUANCE.    Where in such case it appears that the testimony of absent witnesses as set out in an application for a continuance would not make out such defense of insanity as required by law, if the witnesses were present, the application is rightly overruled.

8.    —— : EVIDENCE.    A letter of a witness is admissible on cross-examination for the purpose of impeaching him, where like oral statements would be competent for the same purpose.

9.    —— : —— : DYING DECLARATIONS.    Dying declarations are admissible as evidence only when made where death is imminent and all hope of recovery is abandoned.

10.    —— : —— : ——.    Evidence of dying declarations *held* properly admitted in this case.

11.    —— : JAIL-BREAKING : RESISTANCE BY OFFICER.    A prisoner in jail under conviction of a criminal offense who attempts to escape is thereby in the act of committing a felony ( R. S. 1889, sec. 3702 ), and his jailer in resisting such escape can oppose force to force even to the extent of killing him if necessary.

12.    Criminal Practice : HOMICIDE, INSTRUCTIONS AS TO GRADES OF. On a trial for homicide, the court is the judge of the grades of the offense the evidence tends to prove and should instruct only on the law governing those grades.

13.    —— : —— : JURY.    The jury is to determine which grade, if any, the evidence establishes.

14.    —— : —— : ——.    Where there is no evidence tending to prove a particular grade of homicide, no instruction should be given thereon.

15.    —— : —— : ——.    The evidence in this case examined and *held* not to authorize an instruction on murder in the second degree or on manslaughter.

16.    —— : INSTRUCTION : DEFENDANT'S OWN TESTIMONY.    It is not error to refuse an instruction for defendant on the theory of accidental homicide based on his own oral evidence where such testimony is contradicted as in this case by the physical facts.

*Appeal from Cooper Circuit Court.* — HON.  E.  L. EDWARDS, Judge.

AFFIRMED.

*W. S. Shirk* for appellant.

(1) The plea in abatement to the indictment should have been sustained. The findings of the grand jury must be their own, uninfluenced by the promptings or suggestions of others. *Lewis v. The Comers*, 74 N. C. 194; *United States v. Kilpatrick*, 16 Fed. Rep. 765; *Ex Parte Ass'n*, 8 Phil. 478. (2) The court erred in refusing to grant defendant a change of venue. *Leams v. State*, 84 Ala. 410; *State v. Billings*, 77 Ia. 417; *State v. Loe*, 98 Mo. 609. Under the circumstances of this case the court should have granted the change without formal supporting affidavits. R. S. 1889, sec. 4156. (3) The court erred in refusing to grant defendant's application for a continuance. He should have been given an opportunity to prove the facts set forth in the affidavit. The evidence desired, as shown by the application, would have proved something more than an uncontrollable impulse; it would have shown a mind diseased to such an extent as rendered him wholly irresponsible for the act alleged against him in the indictment — a mania, overruling and destroying reason. *Dacy v. The People*, 116 Ill. 555; 4 Am. and Eng. Cy. Law, bottom of page 716, note 10, and list of authorities cited. (4) It was error to admit the evidence of James H. Johnson and C. G. Gibson, as to Cranmer's dying declarations. Dr. S. P. Hurt, one of the attending physicians, testifies that after the bullet had been cut out and the wounds dressed, and after Cranmer had rested and become quiet, that Cranmer asked the doctors, "Boys, tell me what my condition is, you know I am not afraid to die." This was long after his conversation with Johnson and Gibson, and proves conclusively that, up to the time when he asked the doctors to tell him his condition, he had not abandoned all hope of life, and believed himself about to die. It follows that such was not his state of mind when talking to Johnson

and Gibson, and his declarations made under such circumstances were not admissible. State v. Chambers, 87 Mo. 406; State v. Simon, 50 Mo. 370; State v. McCannon, 51 Mo. 160; State v. Draper, 65 Mo. 365. (5) The court committed error in admitting in evidence the letter written by F. J. Burke to defendant Turlington. There was no proof whatever of any conspiracy or confederation between defendant and Burke, rendering the declarations or statements by Burke contained in the letter admissible against Turlington, nor was there anything in the letter which contradicted or tended to contradict the evidence of said Burke given at the trial. It was, therefore, entirely hearsay, and wholly incompetent, and greatly prejudicial to defendant. Besides it was written long after the commission of the act. (6) The court erred in refusing the sixth and eighth instructions asked by defendant, and in failing to instruct the jury upon the state of facts sworn to by the defendant. It was the duty of the court to do this. State v. Anderson, 86 Mo. 309. (7) The court should have instructed the jury as to manslaughter in the first and fourth degrees. In attempting to escape jail defendant was only guilty of a misdemeanor, inasmuch as he was only confined for a misdemeanor. R. S. 1889, sec. 3705. Turlington testified that he acted without a design to kill Cranmer, and that the act of shooting was involuntary. The killing occurred while perpetrating a misdemeanor. This brings it within the definition of manslaughter in the first degree. R. S. 1889, sec. 3465. And the same may be said as to manslaughter in the fourth degree. R. S. 1889, sec. 3477. And, while not requested to instruct as to these degrees, it was, nevertheless, the court's duty to do so. State v. Palmer, 88 Mo. 568; State v. Banks, 73 Mo. 592. (8) The indictment is bad in two particulars: First. It is unintelligible and does not advise the accused how, or with what, or in what manner, he is

charged with having inflicted upon Cranmer the wound that caused his death. *Second.* The indictment is bad, also, because it alleges that the two defendants made an assault on Cranmer, and with a certain pistol, which they, in their right hand had and held, etc. *State v. Gray,* 21 Mo. 492.

*John M. Wood,* Attorney General, and *John R. Walker* and *G. W. Johnston* for the State.

(1) The court did not err in overruling defendant's plea in abatement to the grand jury. *State v. Bleekly,* 18 Mo. 428; R. S. 1889, secs. 4067, 4068, 6061; *State v. Hart,* 66 Mo. 213; *State v. Holcomb,* 86 Mo. 371. (2) The judgment should not be reversed because of the remarks of the judge in his charge to the grand jury. Thompson & Merriam on Juries [Ed. 1882] secs. 599, 600. (3) The court committed no error in overruling the application for a change of venue. The defendant failed to comply with the statutory requirements. *Railroad v. Frazer,* 25 Neb. 42; 40 N. W. Rep. 604; *State v. Guy,* 69 Mo. 432; *State v. Holcomb,* 86 Mo. 371; *State v. Hunt,* 91 Mo. 490; *State v. Rider,* 95 Mo. 474; *State v. Brownfield,* 83 Mo. 448. (4) The court rightly refused a continuance. *Walton v. State,* 79 Ga. 446. The testimony of the alleged absent witnesses would not have made out the defense of insanity. *State v. Hayes,* 16 Mo. App. 560; *State v. Erb,* 74 Mo. 203; *State v. Kotovsky,* 74 Mo. 248; *State v. Dale,* 89 Mo. 579; *Freleigh v. State,* 8 Mo. 611. (5) The dying declarations of deceased were competent. *State v. Kring,* 11 Mo. App. 92; 74 Mo. 612; *State v. Draper,* 65 Mo. 335; *State v. Wensell,* 98 Mo. 137. (6) The letter of F. J. Burke was rightly admitted for purposes of impeachment. *State v. Stein,* 79 Mo. 330; *Prewitt v. Martin,* 59 Mo. 325; *Waddingham v. Hulett,* 92 Mo. 528. (7) Instruction, numbered 6, asked by appellant, was properly refused. *State v. Dierberger,* 96 Mo. 666; *State v.*

The State v. Turlington.

*Fuller*, 96 Mo. 165; *State v. McNally*, 87 Mo. 644. Besides the instruction not being based on any evidence given in the case was for that reason properly refused. *State v. Chambers*, 87 Mo. 406; *State v. Herrell*, 97 Mo. 105; *State v. Little*, 67 Mo. 624. (8) Instruction, numbered 8, asked by appellant, was, also, rightly refused, especially in view of number 7 given for him. It is not error to refuse an instruction, even if correct, if another to the same purport is given. *Condon v. Railroad*, 76 Mo. 567; *Walker v. Martin*, 10 Mo. App. 589; *State v. Cooper*, 83 Mo. 698; *Boone v. Railroad*, 20 Mo. App. 232.

MACFARLANE, J.—Defendant was convicted of murder in the first degree by the circuit court of Cooper county, for the killing of Thomas C. Cranmer. From the judgment he has appealed to this court.

The indictment upon which the conviction was had is as follows:

" The grand jurors for the state of Missouri, impaneled, sworn and charged to inquire within and for the body of the county of Cooper and state aforesaid, upon their oath, present and charge that John O. Turlington, *alias* William E. West, and Wes. Hensley, on the fourteenth day of June, 1890, at the county of Cooper and state of Missouri, in and upon one Thomas C. Cranmer then and there being, feloniously, wilfully, deliberately, premeditatedly and of their malice aforethought, did make an assault and with a certain pistol, a deadly weapon, which was then and there loaded with gunpowder and leaden bullets, and by them, the said John O. Turlington and Wes. Hensley, held in their hands, the said John O. Turlington and Wes. Hensley did then and there feloniously, wilfully, deliberately, premeditatedly and of their malice aforethought shoot off and discharge at and upon him, the said Thomas C. Cranmer, thereby and thus striking the said Thomas C. Cranmer with one of said leaden bullets, inflicting on and in the left side of his body one mortal wound of the diameter

of half an inch, and of the depth of eight inches, of which said mortal wound the said Thomas C. Cranmer, from the fourteenth day of June, in the year aforesaid, till the fifteenth day of June, in the year aforesaid, at Boonville, in the county aforesaid, did languish, and languishing did live, on which said fifteenth day of June, in the year aforesaid, the said Thomas C. Cranmer, at the city of Boonville, in the county aforesaid, of the mortal wound aforesaid, died, and so the grand jurors aforesaid, upon their oaths aforesaid, do say, that the said John O. Turlington and the said Wes. Hensley, him, the said Thomas C. Cranmer, in the manner and by the means aforesaid, feloniously, wilfully, deliberately and premeditatedly and of their malice aforethought, did kill and murder against the peace and dignity of the state." The sufficiency of this indictment was questioned.

To the indictment defendant interposed a plea in abatement assigning as grounds therefor : *First*, that the judge, in his charge to the grand jury, used improper and prejudicial language, and, *second*, that defendants had not been given opportunity to object to the array of grand jurors, nor to the competency or qualification of any of the members thereof. There was a third ground which was not insisted upon. This plea was supported by the affidavit of the official stenographer of the court, giving the language of the judge, in his charge to the grand jury, by which the indictment was found. This plea was overruled.

Defendant then filed an application for a change of venue from the county, on the ground of the prejudice of the inhabitants against him. This application was in due form, and was properly verified by his own affidavit. He also presented, in support of his application, the affidavit of Mrs. Sarah Earls, in which she stated that she had used diligent effort to procure the affidavits of two disinterested and credible citizens of the county, to support defendant's affidavit, and that she had applied

to many citizens of the county to make such supporting affidavits; that all such persons said that they knew that such prejudice existed, and. that defendants could not have a fair trial in the county, but they feared to make an affidavit to that effect, believing that they would be in danger of personal violence from the citizens of the county, if they did so. Defendants also filed in further support of the application a motion, asking the court to grant the change without such supporting affidavit, because the facts alleged as ground of the application, were within the knowledge of the court, and the court should take judicial notice that the deceased was the sheriff of the county, and of the act of the governor of the state, in calling out the militia to protect the defendants from the violence of the people. This application the court overruled.

In course of time the defendants made an application for a continuance of the case to the next term, on the ground of the absence of certain witnesses alleged to be material. A continuance was denied.

Defendant Turlington was tried separately. On the trial, evidence was introduced, without objection, that defendant, under the name of W. E. West, was, at the date of the homicide, confined in the jail of Cooper county, under a conviction and warrant of commitment for the commission of a misdemeanor; that Cranmer was sheriff and jailer of the county; that Cranmer was shot in the jail, about half past seven o'clock in the evening of Saturday, June 14, 1890; that defendant escaped from the jail at the same time; that when he escaped he had in his hand a pistol, and that Cranmer died of his wounds the next morning about seven o'clock.

During the progress of the trial defendant objected to the testimony of certain witnesses for the state, who undertook to detail certain statements made by deceased after he was wounded, detailing the facts connected with the killing; this testimony was objected to on the ground that a proper foundation had not been laid for

its introduction as the dying declarations of deceased. The objection was overruled.

One Frank Burke testified as a witness in behalf of the defendant. On cross-examination he was shown a letter which he recognized as being one he had written to defendant subsequent to the shooting. This letter was read in evidence over defendant's objection.

Defendant testified in his own behalf. The following is an abstract thereof as made and filed by his attorney: "On the evening that Cranmer was shot, when the dishes were being taken out, the door was open, and I stepped outside of the door with my pistol under my coat, and after I stepped outside of the door I took it from under my coat and said to Cranmer: 'Old man, throw up your hands, I am going away from here;' and when I said that he pulled his gun and fired, and when his gun flashed in my face I turned to run and fell. I stumbled and fell down, and when I fell my pistol went off. I was so excited I do not know whether I was looking at him or not when my pistol went off. And he fired again, and I really do not know whether he fired more than once after that or not. I was so excited after he first shot that I do not know if he shot any more or not. I did not fire off my pistol intentionally. I did not intend to hurt Cranmer or anybody. I thought I could get away. I thought when I showed my gun Cranmer would throw up his hands, and then I could get away without hurting anybody. I did not intend to hurt anybody at all. When Cranmer's pistol flashed in my face I turned to run and fell, and my gun went off in my hands."

On cross-examination he said that he was so excited when Cranmer fired that he could not state the position Cranmer was in when he fired; that he fell down on his hands and knees, and as he fell his gun went off accidentally; that he did not intend to fire off his pistol; that it was not his purpose to hurt anyone; that if he had thought it necessary to kill Cranmer in order to escape,

The State v. Turlington.

he would not have attempted to escape. Defendant also testified that when he went out at the door he had his pistol cocked.

It was admitted that the court properly instructed the jury on murder, in the first and second degree.

The court refused two instructions asked by defendant, and gave no instruction on manslaughter.

I. The indictment was in the usual approved form for murder in the first degree with the exception that the charge is that defendant "with a certain pistol * * * did shoot off and discharge at, and upon, him, the said Cranmer," etc., thus departing from the usual form by supplying or inserting the word "with" before the words "a certain pistol." It is evident that the grammatical and rhetorical construction of the indictment is much impaired by the departure, but it cannot be said that the meaning has, thereby, been rendered so obscure as not sufficiently to advise the defendant of the crime of which he was charged. There is no material charge in the indictment omitted, and the word needlessly and improperly inserted does not tend to prejudice the substantial rights of defendant. R. S. 1889, sec. 4115; State v. McDaniel, 94 Mo. 301; State v. Burnett, 81 Mo. 119; State v. Hughes, 82 Mo. 86; State v. Burns, 99 Mo. 471.

II. The plea in abatement was supported by the affidavit of the official stenographer of the court purporting to give the language of the judge in his charge. The following is the portion of the charge objected to, and what immediately follows:

"Your sheriff has been assassinated—not assassinated, but murdered, in the jail of your county by one whom he had in charge at the time. It is your duty, gentlemen, to investigate this matter. The crime is no greater because it was committed in the jail, for murder is murder, and the aggressor is equally responsible for the crime as if he had met his victim on the street and shot him down. What the circumstances of the killing

were is not for me to say.  It is my duty to give the
charge to the jury, and it is then your duty to hear this
matter when it comes before you, and treat each party
fairly, and after your determination of the case the
court sits here for the protection of the accused as well
as for the public.

"Whether the crime was committed in the jail, I
don't know, and it is not for me to say, but if you find
that such a murder has been committed in your jail,
whether it was the object of this party to secure his
liberty or not, makes no difference whatever.  It is my
duty, gentlemen, to charge you in regard to this matter;
it is your duty to investigate the matter, and if you find
the facts sufficient to justify you in believing that there
has been a murder committed in your jail you should
find an indictment against the party committing it."

It is manifestly improper for a circuit judge, in his
charge to a grand jury, to express an opinion as to the
guilt or innocence of a party accused of a crime to be
investigated.  The action of the grand jury is a part of
the judicial proceedings which may terminate in a con-
viction and sentence of the accused.  The court sits in
judgment between the state and her citizens, and should
"hold the scales with a firm hand without bias or prej-
udice."  The language of the judge in this case was
improper and cannot be justified.  The learned judge
seemed immediately to recognize the impropriety of his
language and corrected it as far as possible.  The quali-
fication of his language and cautions to the jury in the
subsequent part of his charge placed the matters for
investigation fairly before the jury and sufficiently
explained and qualified the strong words previously
used, and, though the criminal procedure under our
statute should authorize the court to abate an indict-
ment on account of the matters complained of here,
taking the whole charge together, what was said could
not have prejudiced the jury in their deliberations.  If
the defendant thought, from the remarks of the judge,

that he was prejudiced, the statute gave him the right to another tribunal, of which he should have availed himself.

We do not think the plea should have been sustained on account of the want of opportunity to make challenges to the grand jury.   It has been the policy of our law to simplify, as far as practicable, the practice and procedure in criminal prosecutions and avoid merely dilatory pleas.   The purpose of the law is, and should be, on the one part, the prompt punishment of crime, and, on the other, a fair and impartial trial of the citizen accused.   Great abuses resulted from the practice of going back of the indictment for facts on which to quash or abate them.   These were usually founded upon the disqualification and misconduct of the grand jurors. The statute has removed this source of delay by providing what objections to the competency of jurors may be made, and requiring that such objections shall be interposed before the jury is sworn.   R. S., secs. 4067, 4068; *State v. Holcomb*, 86 Mo. 376 ; *State v. Drogmond*, 55 Mo. 87, and authorities cited.   The plea in abatement does not show that defendant brought himself within the provisions of the statute.

III.   The statutes of this state have superseded all the rules and practice of the common law, in respect to the change of the place of the trial.   At common law, and in many of the states, an application for a change of venue is addressed to the judicial discretion, and the matter is not deemed one of strict right.   1 Bishop Crim. Procedure, ch. 5.   Under our statutes, the right is peremptory, and not left to the discretion of the court.   R. S., secs. 4154, 4156.   It follows that, in order for one to avail himself of the right, he must bring his application under the terms of the statute, and support it with the affidavit of at least two credible disinterested citizens of the county.   All the provisions of the statute must be complied with in order to secure the right. *Lewin v. Dille*, 17 Mo. 64 ; *Huthsing v. Maus*, 36 Mo.

107. The power of the court to order the change without an application, provided in the proviso of section 4156, is discretionary, and there is nothing in the record to indicate an abuse of the discretion.

IV.  The application for a continuance set out the facts to which the absent witnesses would have testified as follows:  "That when about thirteen years of age defendant received a severe blow on the head with an axe; that prior to that time he was of sound mind and of an upright disposition, but that the blow and severe illness following it wholly unsettled his mind in this: That while recognizing and understanding the difference between right and wrong, and possessed of the strongest impulses to do right, he has ever since that time, been wholly powerless to control his evil impulses; that he has, ever since that time, been seized from time to time with an ungovernable and uncontrollable mania to do any evil or violent act of which his diseased fancy possessed itself, and while praying to be delivered from such uncontrollable mania, and while trying hard to prevent himself from doing such violent or evil act, has nevertheless been driven on by impulses he could not control, telling him in effect, 'you must do it—you cannot keep from it—it must be done.'"

If these facts constituted no defense to the crime of which defendant stood charged, then the continuance was properly denied. *State v. Dale*, 89 Mo. 579.  The witnesses would all have testified, in effect, that defendant was mentally and morally capable of understanding the difference between right and wrong, and presumably of recognizing the wrong of the particular act with which he was charged.   His good impulses were to do right, but his evil impulses to do wrong predominated. , In all cases, where insanity is interposed as a defense, the question, according to the uniform course of decisions in this state, is, whether such insanity rendered the person laboring under it incapable of distinguishing between

right and wrong in respect to the act he was about to commit. *State v. Erb*, 74 Mo. 203; *State v. Redemeier*, 71 Mo. 175 ; *State v. Kotovsky*, 74 Mo. 247. Testing the application by this rule the absent witnesses would have availed defendant nothing if they had been present. No ground for a continuance was shown.

V. Defendant introduced as a witness one F. J. Burke who testified, in his behalf, that at the time of the shooting he was in the jail as a prisoner ; he then testified that deceased fired the first shot. On cross-examination he was shown a letter addressed to defendant, under his *alias* West ; he admitted that he wrote the letter which was as follows :

"*Friend West :*— I hear that they have offered you two of the best lawyers in the state if you will give the whole thing away. I want you to tell me what Smith and the other men were talking to you about. I hope you will not give anything away in regard to the shooting. Charley is going to say that Cranmer fired the first shot and I will do the same, for you know we saw him shoot first. Jake is going out to-morrow and is going to leave here. I want you to say nothing about the clubs, but lay low about them. Dr. Holman and Martin Fuser said they would set me free if I would tell them all about it, but you know I am not one of those kind that will betray a friend. I will stay with you as long as I can, and nothing will make me betray you or anyone else, not even death ; friend, I wish you to be the same to me, but above all don't give poor old Mr. Reed away. The boys are all true to you, and wish you to be the same to them. I think they are going to put me down stairs to-morrow. My friend, I want you to not think hard of me for writing this letter ; I am as true as ever to you and so is Jake and the old man. Answer this to-night.

"From your true friend,

"Boonville Jail.             F. J. BURKE."

This letter was offered and admitted in evidence, to affect the credibility of the witness, and, for this purpose, we think it admissible. It is always competent to draw out of a witness on cross-examination the interest he has in the result of the suit in which he testifies. To have asked this witness if he did not state to some one else the facts and express the sentiments detailed in this letter would have been unquestionably admissible, and, if he had made denial, the party, to whom he had expressed himself, could have been called to contradict him. No reason can be seen why the writing of these facts and sentiments would not be equally admissible. Nothing materially damaging to defendant was contained in the letter, in fact the evidence of the witness, on the material fact of who fired the first shot, was rather strengthened by the letter. *State v. Stein*, 79 Mo. 330. If the contents of the letter had been damaging to defendant, a proper cautionary instruction should have been given.

VI. Did the court commit error in admitting in evidence the dying declarations of Cranmer? The objection is not made to the scope of the declarations testified to, but that no proper foundation had been laid for their introduction. The rule in reference to the admissibility of dying declarations is well established in this state. In order to render such declarations admissible, the party making them must have believed, at the time, that death was imminent, and must have abandoned all hope of recovery. The evidence leaves no doubt that at the time the declarations were made deceased was convinced that death would result from his wounds, and was impending. To witness Johnson he said: "Jim, I am done for, I am going to die." Witness suggested that it was not necessarily so. He replied, "Yes, I am." To witness Gibson he stated that he would not be here long; "that he was pretty nearly wound up, he had only a short time to live." These evidences of his

The State v. Turlington.

belief could not have been made stronger. It is true after he had made these declarations, and after his wounds had been dressed, he said to Dr. Hurt and others : "Boys, tell me what my condition is. You know I am not afraid to die." The doctor told him if he had anything to say he had better say it. The wound was evidently mortal, and he did die in about twelve hours thereafter. This declaration to the doctor does not necessarily show that he still had hope or that hope had revived. It is not inconsistent with the declarations previously made. He wished to know his exact condition ; he had previously expressed his own belief. This declaration, taken alone, would show that, at the time of making it, he may have had hope of recovery ; but taken in connection with his previous statements, and the character of his wounds, we think there can be no doubt he believed, when he made the declarations, that death was certainly impending. That being the case the declarations were properly admitted. *State v. Chambers*, 87 Mo. 408 ; *State v. Wensell*, 98 Mo. 139.

VII. Defendant complains of the action of the court in refusing to give instructions 6 and 8 asked by him. The sixth was as follows :

"The court instructs the jury that if they believe from the evidence that defendant Turlington was confined in the jail of Cooper county under a commitment for the commission of a misdemeanor, and that the deceased, Thomas C. Cranmer, was sheriff and jailer of said county, and had the defendant in his custody as such sheriff in said jail, then the defendant, in attempting to escape therefrom, was guilty of a misdemeanor only, and the said Thomas C. Cranmer had no right to kill, or attempt to kill, the defendant, to prevent his escape therefrom. And notwithstanding the jury may believe from the evidence that the defendant, in order to escape from said jail, and without any purpose or intention to kill said Thomas C. Cranmer, or to do him

any bodily harm, and only to frighten him into allowing defendant to escape, did present at said Cranmer a loaded pistol, and did command him to throw up his hands and allow him to pass out, and that thereupon said Cranmer, not knowing that defendant did not intend to do him any bodily harm, but only escape from said jail, immediately and suddenly drew his pistol and fired at defendant, and was about to fire at him a second time, and that defendant, from said acts, believed, and had good cause to believe, that said Cranmer was about then and there to kill him, then defendant had the right to put himself upon the defensive, and, if necessary, to save his own life, he had the legal right to kill said Cranmer. And if the jury further find that under such circumstances the defendant shot and killed said Cranmer, and having good cause to believe that it was necessary to do so in order to save his own life, then the jury will find the defendant not guilty."

The theory upon which this instruction was asked was that defendant at the time, in attempting to escape from the jail, was in the commission of a misdemeanor only, and deceased had no right to kill him, though necessary to prevent his escape, and if defendant had good cause to believe that deceased was about to kill him he had the right to shoot to save his own life. The evidence shows that deceased was in jail, under a proper warrant, and that the deceased was his proper jailer; that deceased was at the door of the jail, as a guard, while the door was temporarily open, and that defendant with a loaded and cocked pistol, presented at deceased, was forcing his way out of jail. Deceased made resistance and was shot. This court in the case of *State v. Dierberger*, 96 Mo. 666, discusses at length the rights of an officer, in endeavoring to make an arrest, and the force that may be lawfully used in overcoming resistance, and comes to the following conclusion: "The officer must of necessity be the aggressor; his mission is not accomplished when he wards off the

assault; he must press forward and accomplish his object. Because of these duties devolved upon him the law throws around him a special protection."

And again in case of *State v. Fuller*, 96 Mo. 165: "His duty is to overcome all resistance and bring the party to be arrested under physical restraint, and the means he may use must be coextensive with the duty, and so the law is written." 1 Russell on Crimes, 892; Bishop Crim. Law, sec. 647. Bishop says: "In misdemeanors and breaches of the peace, as well as in cases of felony, if the officer meet with resistance and the offender is killed in the struggle, the killing will be justified." 2 Bish. Crim. Law, sec. 650.

While the question discussed in the foregoing authorities was as to the rights and duties of an officer and the protection the law throws around him in making an arrest, the principles apply with even greater force to an officer who has a prisoner in custody, serving out a judicial sentence, in preventing his escape from custody. "Jailers, and their officers, are under the same special protection that other ministers of justice are; and, therefore, if in the necessary discharge of their duty, they meet with resistance, whether from prisoners in civil or criminal suits, or others in behalf of such prisoners, they are not obliged to retreat, so far as they can, with safety; but may freely, and without retreating repel force by force, and if the party so resisting happens to be killed, this, on the part of the jailer or his officer, or any person coming in aid of him, will be justifiable homicide." 2 Bish. Crim. Law, sec. 650.

Section 3702, Revised Statutes, 1889, makes it a felony for anyone confined in any county jail, upon conviction for any criminal offense, to break such prison and escape therefrom. Defendant then, in his attempt by force and arms to escape from the jail, was in the act of committing a felony. He presented at the sheriff, his lawful custodian, a loaded pistol, cocked and ready for fatal use, if his escape was resisted. Under the

authorities cited the time had arrived when deceased had the right to oppose force to force to the extremity of killing the prisoner. The instruction in declaring that Cranmer had no right to kill, or attempt to kill, the defendant to prevent his escape did not properly state the law and was rightly refused.

VIII. The eighth instruction asked by defendant and refused was as follows : " If the jury believe from the evidence that the defendant presented his pistol at the deceased, Thomas C. Cranmer, without any purpose or intention of killing said Cranmer or doing him any bodily harm, and that said Cranmer thereupon drew his pistol and fired at the defendant, and that the defendant suddenly, and without premeditation or deliberation, fired the shot which killed said Cranmer, then the defendant is guilty of murder in the second degree only, and the jury will so find."

The court is the judge of the grade of the homicide the evidence tends to prove, and should only instruct on the law governing these grades. The jury is to determine which grade, if any, the evidence establishes. *State v. Ellis*, 74 Mo. 207 ; *State v. Lewis*, 74 Mo. 222. If there is no evidence tending to prove a particular degree of murder, no instruction should be given as to that degree. *State v. Patterson*, 73 Mo. 713 ; *State v. Talbot*, 73 Mo. 347 ; *State v. Hopper*, 71 Mo. 425.

There is no evidence in the case that would have justified this instruction. It is insisted that the element of deliberation, which is necessary to constitute murder in the first degree, was wanting in this homicide, or the evidence tended to prove its absence. A careful consideration of the facts and circumstances connected with the killing convinces us to the contrary.

Defendant was confined in the jail, under a conviction for a misdemeanor ; deceased was the sheriff and jailer having defendant in custody. It was supper time, and one of the prisoners was waiting on the others during that meal, carrying dishes from the kitchen in

another part of the building to the jail.   The jail door for the time was unbolted, and deceased was standing on the outside of the door as guard.   Defendant suddenly rushed out of the door having in his hands a drawn, loaded and cocked pistol, which he had carried under his coat until he reached the door ; he presented the pistol at the sheriff and ordered him to throw up his hands, and remarked :  "I am going away from here."   To this point there is no conflict, defendant himself testifying to his own acts.   Deceased in his dying declarations says at this point he reached for his pistol and defendant shot him, fell or stooped down and ran through the hall and made his escape.   Defendant testifies at this point, that deceased drew his pistol and fired one shot, he ( defendant ) fell on his hands and knees and his pistol was accidently discharged, without intention on his part.   The ball struck deceased between the eighth and ninth ribs passing through the body in nearly a horizontal direction, inclining a little downward.   There is no evidence whatever of the shooting under a state of facts hypothetically stated in the instruction.   This instruction presupposes a wilful killing, and is not predicated on an accidental shooting as testified to by defendant.   Supposing the homicide to have been wilful does the evidence show a want of the deliberation which is necessary to make the instruction proper?

The evidence shows the most careful preparation, consideration and deliberation, in carrying out his scheme for escape.   By some secret means he had procured a pistol.   What did he intend to do with it?   Before he made the break he carefully cocked it ready for use, concealed it under his coat to prevent suspicion and detection.   He stepped out of the prison door, presented his loaded and cocked pistol at the sheriff and ordered him to throw up his hands, and, as the sheriff said, when he made a motion for his pistol, shot him through.   The sheriff's declarations must be taken, as

the instruction is not predicated on the testimony of defendant.  But, disregarding the declarations of the deceased that defendant fired the first shot, was there a want of deliberation ?  Why the pistol ?  Why cocked? Why presented at his victim ?  Under this state of facts there can be no doubt that deliberation was a constituent part of every step leading up to  and including the homicide.  There can be no shadow of a doubt that defendant deliberately purposed in his heart, that, if the sheriff showed the lightest resistance to his escape, he would kill him.  There was then no evidence to justify the court in giving the instruction.

IX.   Defendant insists that an instruction should have been given covering the crime of manslaughter. It has been repeatedly held by this court, that it is the duty of the trial court to instruct the jury on all grades of homicide which the evidence tends to prove, whether asked or not.   *State v. Palmer*, 88 Mo. 568.   It would, however, be improper to confuse the jury by giving instructions in relation to matters of which there was no evidence.   *State v. Wilson*, 88 Mo. 19 ; *State v. Herrell*, 97 Mo. 107.

If there was evidence tending to prove manslaughter, an instruction should have been given advising the jury on that grade of the homicide.   We are convinced there was no manslaughter in the case.   There is no need to make reference to the testimony farther than has been done on other questions ; no one can read the record in this case without coming to the same conclusion, that defendant carried, cocked and presented the pistol at the sheriff with the wilful, deliberate and premeditated purpose of killing him, in the event that any opposition was made to his escape, notwithstanding defendant's own testimony to the contrary.  The doctors who attended deceased and who made a *post-mortem* examination testified, that the ball went through the body in nearly a horizontal direction, ranging a little downward.   On his examination defendant was asked :

"*Q.* What position were you in when you fired?
*A.* I can't tell you ; I was down on my hands and
knees ; I fell down and my gun went off accidentally, I
don't know exactly what position I was in." It would
have been a physical impossibility for defendant, while
on his hands and knees, to have inflicted the wound
described by these physicians. The hand that held the
pistol must have been at least as high as the wound
inflicted. Defendant then must have fired the pistol
shot before he fell. All the other facts and circum-
stances point to the same conclusion. Defendant's
words cannot be believed when contradicted, as they are,
by the physical facts. "Neither courts nor juries should
be required to base their actions or belief on physical
impossibilities." *State v. Anderson*, 89 Mo., on page
332 ; *State v. Bryant, ante*, p. 24.

But the court left no cause of complaint on this
point, but gave an instruction which fully covered all
the questions made by defendant's testimony on the
hypothesis of its truth. The instruction is as follows :
"If the jury believe from the evidence, that the defend-
ant presented his pistol at the deceased, Thomas C.
Cranmer, only with the purpose and intention of fright-
ening said Cranmer, and without any purpose of killing
him or of doing him any harm, and that said Cran-
mer thereupon suddenly shot at defendant, and that by
said shot the defendant was so frightened and startled
that the pistol in his hand was unintentionally and
involuntarily discharged, and the said Thomas C. Cran-
mer thereby killed, then the defendant is not guilty of
murder in the first degree, and the jury cannot find the
defendant guilty of that offense."

It is true this instruction failed to inform the jury
of the particular degree of homicide of which defend-
ant would have been guilty, if they had found the facts
hypothetically stated in the instruction to be true. The
jury should have been given this information, but a
failure to do so could not have prejudiced defendant.

The jury was advised that if the facts were found to be true, that is, if the shooting was accidental, defendant would not be guilty of murder in the first degree. The jury found defendant guilty of murder in the first degree, and by such finding negatived the theory that the shooting was not intentional.

Finding no error in the record, we affirm the judgment, and direct the sentence pronounced be executed. R. S., sec. 4298. All concur.