# THE STATE v. GLEASON, Appellant.

### Division Two, February 24, 1903.

1. **Indictment:** MURDER: CONCLUSION: "IN MANNER AND FORM AFORESAID." The indictment in its conclusion, which is an essential part of an indictment, did not use the words, "in manner and form," but instead said: "And so the grand jurors aforesaid, upon their oath aforesaid, do say that the said Gleason him, the said Nelson, then and there *by the means* aforesaid, at the county aforesaid, on the day aforesaid, feloniously, willfully, premeditatedly, deliberately, on purpose and of his malice aforethought, did kill and murder," etc., and these words were preceded by a recital in full form charging an assault, the infliction of a mortal wound, and that Nelson died of that wound, and in that part thereof the averments are full and technical as to time, place, manner and all other matters essential. *Held*, that the omission of the words "in the manner aforesaid" did not vitiate the indictment, since the words used, among others, "by the means aforesaid," are sufficient to preserve every essential element in the conclusion of a common law indictment.   [Disapproving State v. Burns, 148 Mo. 167, in approving the omission of the words "upon their oath" in the conclusion.]

2. ———: OMISSION OF WORD "WITH." The omission of the word "with" before the words, "a certain pistol . . . did discharge and shoot off," etc., not only does not render the indictment defective, but its use in that connection would mar the strength of the charge.

3. **Murder in Second Degree:** INSTRUCTION. The State's evidence tended to show that defendant, smarting under the charge of deceased, who was his partner in a restaurant, that he was not doing his part of the work, became involved in a quarrel with him, and each passed the lie; that thereupon defendant went into a front room, armed himself with a pistol, returned to the dining-room. and presented it at deceased while he was engaged waiting on a customer, and deceased did no more than to try to ward off the pistol when defendant shot and killed him. *Held,* that these facts authorized the court to instruct the jury, that, if they found these facts to exist, defendant was guilty of murder in the second degree.

4. ———: CONSTITUENT ELEMENTS. If deceased was not the aggressor, but had called defendant a liar, and defendant incensed at the insult, but without lawful provocation, willfully and intentionally shot deceased in a vital part with a deadly weapon, he was guilty of murder in the second degree.

5. **Juror:** MISCONDUCT: NO OBJECTION. Where the alleged misconduct of a juror occurs in the presence of the court and of defendant's counsel, counsel should call the court's attention to it at the time and not wait until after verdict to object thereto.

6. ———: ———: FINDING OF COURT. Where the trial judge saw the juror, and heard the evidence on both sides as to his misconduct, and found none to exist, the court's finding settles the issue.

7. **Evidence:** REVIEW ON APPEAL. Where the substantial evidence on both sides is conflicting, it is peculiarly the province of the jury to determine the facts. The Supreme Court will not interfere where the contention is merely that the weight of the evidence was against the verdict.

Appeal from Dent Circuit Court.—*Hon. L. B. Woodside,* Judge.

AFFIRMED.

*J. J. Cope, Wm. P. Elmer* and *L. Judson* for appellant.

(1) In the conclusion of the indictment is omitted the "manner and form" of the killing. The conclusion

is just as essential as any other part of the indictment, and a form was prescribed by this court in the Rector case, which has not been followed herein. Nothing is taken by intendment. State v. Rector, 126 Mo. 340; State v. Meyer, 99 Mo. 107; Kelly's Crim. Law (2 Ed.), secs. 474 and 503; State v. Pemberton, 30 Mo. 376; State v. Furgerson, 162 Mo. 675; State v. Hagan, 164 Mo. 658; State v. Brown, 168 Mo. 454. (2) The court erred in refusing instructions 2 and 3 requested by defendant. Taking the whole evidence there is nothing but fourth degree manslaughter in the case. When deceased slapped defendant in the face or struck him with the dish, this was a provocation that would reduce the killing to manslaughter, regardless of the self-defense proposition. The presumption of murder in the second degree from an intentional killing is rebutted by the State's evidence. State v. Garrison, 147 Mo. 548; State v. Baker, 146 Mo. 379. (3) The court erred in refusing instruction 1 requested by defendant. In instruction 4 for the State the court instructs on the theory that defendant, in calling deceased a liar, may have provoked the difficulty, and caused Nelson to assault him in order that defendant might have an opportunity of killing deceased. Therefore, if on the contrary defendant called deceased a liar merely to dispute his word and had no intention of provoking the difficulty, his right of self-defense could not be lessened or effected, and the killing at most, was but manslaughter. (4) Juror Asher's conduct was reprehensible, and showed an utter disregard of defendant's rights, or lack of comprehension of the gravity of the charge. (5) The acts and conversations of John A. Eaves and H. A. Blackwell, with the jury, constitute reversible error. They had no right to speak to the jury about pistols and the sheriff, in taking the jury to shoot the pistol in question, was prejudicial to defendant. State v. Orrick, 190 Mo. 124; State v. Stifel, 106 Mo. 134; State v. Howland, 119 Mo. 420; State v. Sansone, 116 Mo. 1.

*Edward C. Crow,* Attorney-General, *Sam B. Jeffries,* Assistant Attorney-General, and *Jerry M. Jeffries* for the State.

(1) The indictment in every way charges the crime of murder in the first degree. Acts which make a felonious assault are set out, the striking and wounding are alleged, and it seems in every way sufficient to properly inform defendant of the charge against him. State v. Patterson, 73 Mo. 695; Shay v. People, 4 Perkins' Criminal Cases 353. (2) The evidence in support of the motion for a new trial does not prove that the sheriff made public the deliberations of the jury after they retired to consider of their verdict, nor that he knew what their deliberations were, or that the verdict was affected thereby. The evidence in support of the motion for a new trial does not prove that "John Evans who was not sworn to take charge of the jury was permitted to and did accompany the jury during their deliberations of their verdict and commingled with them and carried on a conversation with them with or without order of court," much less that defendant was prejudiced by such actions. There is nothing to show that juror J. K. Asher was prejudiced against defendant or in any manner exhibited ill will against him during the trial. The evidence fails to prove such allegation, but on the other hand proves the contrary. The evidence does not show that jurors J. K. Asher, R. E. Maledy and W. T. Horner, or any of them, had formed and expressed an opinion of defendant's guilt prior to their or his examination on "*voir dire.*" The burden is on defendant to establish the truth of his allegation that a juryman before being impaneled had expressed an opinion as to his guilt. State v. Brooks, 92 Mo. 542; State v. Cook, 84 Mo. 40. Such questions are to be determined by the trial court, and that finding will not be disturbed, unless it is shown to be clearly unwarranted. State v. Brooks, supra; State v. Noland, 111 Mo. 473. Where evidence pro and con is introduced

upon the question whether a juror was prejudiced, the finding of the trial court is conclusive.   State v. Dusenberry, 112 Mo. 277; State v. Williamson, 106 Mo. 162. It is no ground for objection to a juror that he has formed an opinion from rumor or newspaper reports.   State v. Williamson, 106 Mo. 162; State v. Brown, 71 Mo. 454.

GANTT, P. J.—At the April term, 1899, of the circuit court of Dent county, the grand jury of that county preferred the following indictment for murder against the defendant, John Gleason.

"The grand jurors for the State of Missouri, summoned from the body of the inhabitants of Dent county, being duly impaneled, sworn and charged to inquire within the body of the county of Dent aforesaid, on their oath do present and charge that John Gleason at Dent county, Missouri, on the 24th day of December, 1898, in and upon one Harry Nelson, in the peace of the State then and there being, feloniously, willfully, deliberately, premeditatedly and on purpose and of his malice aforethought, did make an assault, and that the said John Gleason, a certain pistol then and there charged with gunpowder and leaden balls which said pistol he, the said John Gleason, in his hands then and there had and held, then and there feloniously, willfully, deliberately, premeditatedly, on purpose and of his malice aforethought, did discharge and shoot off, to, against and upon the said Harry Nelson. And that the said John Gleason, with the leaden balls aforesaid, out of the pistol aforesaid, then and there by force of the gunpowder aforesaid by the said John Gleason discharged and shot off as aforesaid then there feloniously, willfully, deliberately, premeditatedly, on purpose and of his malice aforethought, did strike, penetrate and wound him the said Harry Nelson, then and thereby feloniously, willfully, deliberately, premeditatedly, on purpose and of his malice aforethought giving to him the said Harry Nelson, in and upon the upper part of the left breast of him, the said Harry Nelson, one mortal wound of

the depth of six inches and of the breadth of one-half inch, of which mortal wound he the said Harry Nelson, then and there instantly died. And so the grand jurors aforesaid, upon their oath aforesaid, do say that the said John Gleason him, the said Harry Nelson, then and there by the means aforesaid, at the county aforesaid, on the day aforesaid, feloniously, willfully, premeditatedly, deliberately, on purpose and of his malice aforethought did kill and murder: against the peace and dignity of the State.''

The defendant was duly arraigned and entered his plea of not guilty.

After two mistrials, the prosecuting attorney elected to prosecute for murder in the second degree only, and defendant was again duly arraigned and the cause tried resulting in a conviction of murder in the second degree and assessing his punishment at ten years' in the penitentiary.

From the sentence on that verdict, defendant appeals.

The defendant and Harry Nelson, the deceased, were partners in a restaurant business in the city of Salem at the time of the homicide. The deceased, Nelson, was the cook in the establishment. Prior to December 24, 1898, the evidence discloses no bad feeling between the partners, but on the afternoon of that day it appears there was a rush of business and about 4:30 or 5 o'clock deceased came into the front room of the store and complained that he must have more help in the dining room and kitchen, saying that he and his boy Roy Nelson, couldn't do all the work, and that defendant was sitting there smoking his pipe and doing nothing. Another assistant, Rouse, was sent to help him and deceased returned to the kitchen and dining room to serve the guests who were complaining of the delay.

In a short time, only a few minutes, defendant came to the dining room and accosting deceased inquired what he would take for his interest in the business and get out. Deceased replied, ''Fifty dollars and his wages.'' Defendant refused to give that sum and deceased again

made the charge that defendant was not doing his part, to which defendant replied, deceased was a liar.   Defendant then returned to the front room, and placed a revolver in his pocket, he says in his pant's pocket, others say he had it in his right-hand hip pocket.   Thus armed he returned to the dining room where deceased was just serving some oysters to a guest.   Defendant approached deceased where he was standing near the table and at this point the evidence becomes very conflicting and contradictory.   On the part of the State the testimony tends strongly to prove that defendant came into the dining room with his pistol in his hand and approached deceased, coming within five or six feet of him, and that deceased seeing the revolver struck at it as if to ward it off, and thereupon defendant shot him, in the breast, giving him a mortal wound from which he instantly fell to the floor and expired within thirty minutes; that deceased had made no assault on defendant prior to the presenting of the revolver at him and then only to avert the shot.

On the part of defendant the evidence tended to show that the wordy altercation was renewed, in which each gave the other the lie, and that deceased slapped or struck defendant with his hand or fist, and then reached for a plate on the table.   Some of the witnesses say he threw the plate and others that he reached for the plate but it was knocked from his hands.   Still others say he struck defendant and knocked him back and was pursuing the fight before defendant drew the revolver and fired.

This court can not reconcile the conflicting statements of the witnesses for the State and defendant.

There was also evidence that defendant borrowed the pistol that forenoon about 11 o'clock.   That when he came back into the dining room after getting the pistol in the front room, he said, "I'll kill some G—d d—n nigger before sundown."

The deceased was a negro man.   There was some evidence that after defendant had shot and killed deceased he walked out of the dining room through the

front room and into the street. That there was some blood on his forehead; there was also evidence that there was a contused wound on his forehead after he was arrested and placed in jail. Other facts may be noted in the course of the opinion.

I.   The indictment is challenged as insufficient because in its conclusion it does not allege that "the grand jurors upon their oath aforesaid do say that the said John Gleason, him the said Harry Nelson, then and there *in manner and form* as aforesaid," etc.

It will be observed that the indictment, in lieu of the words *"in manner and form,"* charges that the defendant "then and there by the means aforesaid at the county aforesaid, on the day aforesaid feloniously, willfully, premeditatedly, deliberately, on purpose and of his malice aforethought did kill and murder, against the peace and dignity of the State."

The only departure from a correct form of the conclusion in an indictment for murder of which defendant complains is that the pleader used the words *"by the means aforesaid"* instead of "in manner and form aforesaid."

The conclusion of an indictment was an essential part of the indictment at common law and such has been the uniform rule in this State.

In State v. Pemberton, 30 Mo. 376, this court through Judge NAPTON held the indictment bad because of the omission in the conclusion of the name of the deceased and that our statute of jeofails did not reach such an omission as this, but only that class of defects mentioned in the statute such as the defendant's title, "force and arms," etc.

In Ex parte Slater, 72 Mo. 102, this court held that when our Constitution ordained that felonies could only be prosecuted by indictment, it meant the common-law indictment and its essentials.

In State v. Meyers, 99 Mo. 107, it was again ruled, after a careful review of the common law on the subject, that the conclusion in an indictment for murder is an essential part of the indictment and without the allega-

tion, "and so the grand jurors or the jurors aforesaid upon their oath do say that the said defendant [naming him] in the manner and form aforesaid, him the said deceased [naming him] willfully, feloniously, etc., did kill and murder against the peace and dignity of the State," the indictment only charged manslaughter.

And again in State v. Rector, 126 Mo. loc. cit. 341, it was ruled that it was necessary to charge in the conclusion that the defendant "did feloniously, willfully, deliberately, premeditatedly and of his malice aforethought" kill and murder the deceased and not merely "in manner and form did kill and murder," without the qualifying adverbs above noted. [See also State v. Stacy, 103 Mo. 11; State v. Furgerson, 152 Mo. 92; State v. Evans, 158 Mo. loc. cit. 603; State v. Sanders, 158 Mo. 610.]

The State v. Burns, 148 Mo. 167, to the extent that it approved an indictment which omitted in the conclusion the words "upon their oath," is disapproved.

But conceding that the conclusion is an essential part of an indictment, we are now called upon to say that the conclusion of this indictment is utterly insufficient because the words *"in the manner"* are omitted therefrom. It will be noted that it reads "And *so* the grand jurors aforesaid, upon their oath aforesaid, do say that the said John Gleason him, the said Harry Nelson, then and there *by the means aforesaid,* at the county aforesaid, on the day aforesaid, feloniously, willfully, premeditatedly, deliberately, on purpose and of his malice aforethought, did kill and murder against the peace and dignity of the state." Many of the most approved forms of common-law indictments use the words "by the means aforesaid" instead of "in the form aforesaid" and, indeed, they seem preferable. [3 Chitty's Crim. Law, *751; 1 East P. C. 347, sec. 117.]

The indictment is in the full form of the common-law indictment for murder and recites an assault, the infliction of a mortal wound, and that Nelson died of that wound, and in this part of the indictment the averments are full and technical as to time, place, manner,

and all other matters essential. Having alleged all these, what possible fact is omitted when the pleader repeats "and so the grand jurors aforesaid, upon their oath do say that the said John Gleason him the said Harry Nelson, then and there *by the means aforesaid,* at the county aforesaid, feloniously, etc., did kill and murder?" The words mean and expressly indicate and state, without leaving anything for inference or surmise, the manner in which the death of the deceased was brought about. Mindful as we are of the importance of preserving every essential of a common-law indictment, we are of opinion that the words used are sufficient to make a good indictment and the words "by the means aforesaid," referring as they do to the exact manner of the homicide, with the other words in the conclusion, are sufficient. It is passing strange, however, that the prosecuting attorneys will not follow the recognized forms and precedents. It was long ago remarked by Lord MANSFIELD that while "tenderness ought always to prevail in criminal cases, so far at least as to take care that a man may not suffer otherwise than by due course of law, tenderness does not require such a construction of words as would tend to render the law nugatory and ineffectual, and destroy or evade the very end of it, nor does it require of us that we should give in to such nice and strained critical objections as are contrary to its meaning and spirit." [1 Chitty Cr. Law, 170-171.]

Again it may be said that the omission of the word "with" before the allegation "a certain pistol then and there charged with gunpowder and leaden balls," etc., renders the indictment defective in failing to state with what instrument the assault was made, as in State v. Furgerson, 152 Mo. 92. But as was pointed out in State v. Evans, 158 Mo. 603, and in State v. Turlington, 102 Mo. 651, the use of the word "with" before the word "pistol" is not only entirely unnecessary, but would mar the strength of the allegation. While it was said in State v. Prendible, 165 Mo. l. c. 348, that State v. Turlington, supra, should not be followed, a careful ex-

amination of the most approved precedents will demonstrate that when the allegation is in the form used in this indictment the word "with" before the words "a certain pistol," etc., is not only not necessary but is not in accord with the approved forms. [1 Wharton's Precedents of Indictments and Pleas, 115 and 117-117a, 117b, 117e; Bishop's Directions and Forms, sec. 520; 3 Chitty's Cr. Law, *page 752.]

So that the omission of the word "with" in the connection noted was proper. This conclusion in nowise conflicts with those cases in which it was held necessary to charge that the assault was made with an axe, or a sword or other similar instrument. In this indictment, as in the forms which it followed, it is expressly alleged further on in the indictment that "with" the leaden balls the defendant did strike and wound the deceased.

II. It is urged as error that the court improperly instructed on murder in the second degree when there was nothing more than manslaughter in the fourth degree in the case. To this we can not give our consent. The evidence was conflicting, but the State's evidence tended to show that defendant, smarting under the charge that he was not doing his duty, became involved in a quarrel with deceased, and that each passed the lie; that thereupon defendant went into the front room, armed himself with the revolver, and returned to the dining room and had presented it at deceased while he was engaged in waiting on a customer, and that deceased did no more than to ward off the pistol when defendant shot him, while defendant's testimony tends to show deceased was the aggressor and had assaulted him first. An issue of fact was thus presented, and it was the duty of the court to present the law of the case in the alternative. If the jury found that deceased was not the aggressor, but had called defendant a liar, and that incensed at the insult, but without lawful provocation defendant willfully and intentionally shot deceased in a vital part with a deadly weapon, then he was guilty of murder in the second degree. On the other hand, the

court instructed the jury both on self-defense and man-slaughter, leaving to them to determine the facts.

There was no error in the instructions and they were exceedingly favorable to defendant. Nor are they open to the criticism that they were not based on the evidence.

III. The defendant complains of certain jurors. The alleged misconduct of juror Asher occurred, if at all, in the immediate presence of the court and defendant and his counsel, and no objection was taken to it. The court was not requested to admonish or caution the juror and no mention was made of it until after verdict. Counsel were remiss if they observed misconduct and failed to call the court's attention to it at the time. But as a matter of fact the court found there was no such misconduct. He saw the juror, heard the evidence on both sides and his finding must settle that issue.

As to jurors Maledy and Horner: Neither of them had heard any of the evidence or talked with a witness; neither had formed or expressed an opinion, and the trial court found as a fact that their answers on their *voir dire* were true. The rumor that one juror on a former trial had been approached in no way disqualified the juror who had heard it.

The examination of these charges against the jurors was before the trial judge who had an opportunity to weigh the evidence and there is no ground for finding that he exercised an unwise discretion in denying a new trial on this ground.

The defendant had a fair trial and it was peculiarly a case for a jury to determine the facts.

It is not our province to interfere with a verdict where the contention is merely that the weight of the evidence is against the verdict. We are in no position to weigh the evidence, where the evidence is conflicting, as this was.

The judgment must be and is affirmed. *Burgess* and *Fox, JJ.,* concur.