THE STATE v. BURNS, Appellant.    |14~  167|
|o172  ¹267|

### Division Two, February 21, 1899.

1. **Murder**: INDICTMENT. The indictment in this case is set out in full, and is held to charge every fact essential to a good indictment for murder, and to be in the most approved form.

2. ———: KILLING OF WIFE BECAUSE OF INFIDELITY: JEALOUSY. It was proper to instruct the jury, on part of the State, that, if defendant killed his wife because she had been unfaithful to her marriage vows, or because of his jealousy, he was guilty of murder in the first degree.

3. ———: IMPEACHMENT: STATEMENT BY DEFENDANT'S MOTHER. The defendant's mother had testified that he would not kill his wife because he loved her so, and denied that she told another witness immediately after the killing in the presence of the dying woman, that defendant had said that "if ever he saw" his wife "again, he would kill her, and now he has made his word good." *Held*, that it was proper to ask this other witness, by way of impeachment, if defendant's mother made this statement, because if defendant made it she knew he had threatened to kill his wife.

4. ———: JUROR: RESIDENCE. Where the preponderance of the evidence is that a juror was a citizen of the county, had resided therein, had voted at a late election in the county, and had expressed his intention to vote the next fall at the general election in said county, and was an old resident of the State, he will be held to be a resident of the county.

5. ———: POLLING JURY. It is not the duty of the trial court to poll the jury of its own motion without a demand therefor by the defendant or his counsel.

*Appeal from Scott Circuit Court.*—HON. HENRY C. RILEY, Judge.

AFFIRMED.

ALBERT DE REIGN for appellant.

(1) In view of all the circumstances and facts in the case, the verdict of the jury was against the evidence, taking

the evidence in its most damaging features against the defendant; and if no errors had been committed by the court in the trial of the cause, he should have been convicted of murder in the second degree only. (2) The indictment is fatally defective because it fails to allege the mortal wounding of deceased, with the necessary averments; it fails to state, as it ought to, that the alleged mortal wound, which caused the death of deceased, was inflicted deliberately, premeditatedly, and with malice aforethought, by the defendant. State v. Herrell, 97 Mo. 105. (3) The court also committed error in permitting the prosecution to introduce irrelevant and incompetent testimony in cross-examining defendant's mother. Clara Hunter's testimony was wholly incompetent and very prejudicial to the defendant. If the Burns woman had admitted making the statement attributed to her by the Hunter woman it would have been wholly irrelevant and incompetent, as it would have been no part of the *res gestae*. State v. Snell, 78 Mo. 240; State v. Rider, 95 Mo. 474; State v. Hughes, 71 Mo. 633; State v. Elkins, 101 Mo. 344. If the statement of the Burns woman was incompetent and not relevant to the issue (which it was not), then it was not subject to impeachment. 1 Greenl. on Ev., sec. 462; Ern v. Rubinstein, 72 Mo. App. 343; State v. Hughes, 71 Mo. 633. (4) The instruction on motive is bad because its terms are too general and indefinite. The court tells the jury that, "If the defendant killed his wife because of jealousy entertained towards her, then he is guilty of murder in the first degree." This virtually told the jury that they could find the defendant guilty of murder in the first degree, upon the element of jealousy alone, and without finding the element of deliberation, premeditation, etc. State v. Martin, 74 Mo. 547. (5) The court ought to have set aside the verdict and granted the defendant a new trial, because the record does not show the verdict to be the unanimous decision of the jury. The verdict has but the signature of one member of the jury of twelve. It ought to show that it is the

verdict of the twelve men who tried the accused. Sec. 28 of the Bill of Rights. The verdict of a jury prior to the adoption of the Constitution is defined as, "the unanimous decision made by a jury and reported to the court on the matter lawfully submitted to them in the course of a trial of a cause." 2 Bouvier's Law Dic., 622. (6) The court also erred in not granting defendant a continuance. The application shows good grounds why the case should have been continued. He was indicted at one term of court and tried at the next. The defendant being in jail, used all diligence in his power to prepare for trial, but was greatly prejudiced in not having sufficient time to procure the attendance of important witnesses in his behalf by the court's refusal to postpone the trial. State v. Bradley, 90 Mo. 160; State v. Dawson, 90 Mo. 144.

EDWARD C. CROW, Attorney-General, and SAM B. JEFFRIES, Assistant Attorney-General, for the State.

(1) Where an inference of guilt can be drawn from the evidence, the finding of the jury will not be disturbed on the ground of insufficiency of the same to support the verdict. State v. Banks, 118 Mo. 117; State v. Cantlin, 118 Mo. 100; State v. Moxley, 115 Mo. 644. (2) The indictment is good in every part. The assault, the shooting and the mortal wounding are respectively charged with having been done feloniously, premeditatedly, deliberately and with malice aforethought. State v. Herrell, 97 Mo. 185; State v. Burnnest, 81 Mo. 119; State v. Hughes, 82 Mo. 86; State v. McDaniels, 94 Mo. 471; State v. Turlington, 102 Mo. 647; State v. Kindred, 148 Mo. 270. (3) Defendant's mother was an important witness in his behalf, and had her testimony shown the same fact about which she was questioned, as shown by the statements made to Clara Hunter, it would have been material to the case

State v. Burns.

and a part of the *res gestae* on the questions of delibera-
tion and premeditation. In this case the witness was no
party to the homicide, and the statement upon which the im-
peachment was based was a material question. The previ-
ous statement of the witness, and about which she was ques-
tioned, being relevant to the issues involved, no error can be
assigned. 1 Greenl. on Ev., sec. 462. (4) The granting
of a continuance is a matter resting largely in the wise dis-
cretion of the trial court. It does not appear that such dis-
cretion was in any manner abused. The evidence set up in
the application would not have been admissible, nor would
it have been of material benefit to defendant, though ad-
mitted. (5) Defendant was entitled to have the jury
"polled," but unless he so requested, it was altogether unnec-
essary.

GANTT, P. J.—The defendant, a negro man, was con-
victed in the circuit court of Scott county, of murder in the
first degree, and appeals from the sentence.

The defendant and his wife, Mag Burns, resided with
the defendant's mother in the town of Commerce, in Scott
county. They had been married about two years.. The evi-
dence shows defendant had maltreated his wife and she had
left him several days prior to the twenty-fourth of July,
1897.

On the morning of that day the wife called upon the
constable, Mr. Watson, and requested him to go with her to
her husband's home to get her clothing, saying she was afraid
to go by herself, that he would kill her. The constable ac-
companied her. The defendant was not at home when they
first went to the house.

The constable asked defendant's mother to give the wife
her clothing, but she refused. While they were talking in
the yard in front of the house, defendant returned and the
constable told defendant what they wanted. He replied "all
right," passed into the house and soon emerged with a double

barrel shot gun in his hands and opened fire, first shooting the constable and as his wife ran he shot her in the back, the load going entirely through her body. The constable managed to get back to the marshal's office, and sent him to arrest defendant. The defendant's wife died almost instantly in the garden of the lot on which she was shot.

At the October term, 1897, the grand jury returned the following indictment:

"The grand jurors for the State of Missouri, duly impaneled, charged and sworn to inquire within and for the body of Scott county, Missouri, upon their oaths present and charge that one Will Burns, at the county of Scott and State of Missouri, on the 24th day of July, A. D. 1897, in and upon one Mag Burns, then and there being, feloniously, willfully, premeditatedly, deliberately, on purpose and of his malice aforethought, did make an assault, and with a dangerous and deadly weapon, to wit, a shotgun loaded then and there with powder and leaden balls, which he, the said Will Burns, in his hands then and there had and held at and against her, the said Mag Burns, then and there feloniously, willfully, premeditatedly, deliberately, on purpose and of his malice aforethought, did shoot off and discharge, and with the shotgun aforesaid and the leaden balls aforesaid, then and there feloniously, willfully, premeditatedly, deliberately, on purpose and of his malice aforethought, did shoot, strike, and penetrate and wound her, the said Mag Burns, in and about a vital part of the body of her, the said Mag Burns, to wit, in the back part of the body of her, the said Mag Burns, giving to her, the said Mag Burns, at the said county of Scott, and State of Missouri, on the said 24th day of July, 1897, with the dangerous and deadly weapon, to wit, the shotgun aforesaid, and the powder and leaden balls aforesaid, in and upon the back part of the body of her, the said Mag Burns, one mortal wound, of the width of about one inch, and of the depth of about three

inches, of which said mortal wound she, the said Mag Burns, at the county of Scott and State of Missouri, on the said 24th day of July, 1897, then and there of the mortal wound aforesaid instantly died; and so the grand jurors aforesaid do say that he, the said Will Burns, her, the said Mag Burns, in the manner and by the means aforesaid, feloniously, willfully, premeditatedly, deliberately, on purpose and of his malice aforethought, at the said county of Scott and State of Missouri, on the said 24th day of July, A. D. 1897, did kill and murder against the peace and dignity of the State."

The court, on application of defendant, appointed counsel to defend him. The cause was continued on application of defendant to the April term, 1898. At the April term a motion to quash the indictment was filed, heard and overruled.

Another application for continuance was filed on account of an absent witness, one Snow, whose residence was alleged to be in Charleston, Mississippi county, but at the time absent in Paducah, Kentucky. This motion was likewise overruled, and thereupon defendant was arraigned and pleaded not guilty. A jury was impaneled, the evidence heard, and a verdict of guilty of murder in the first degree, as charged in the indictment, rendered.

I. The motion to quash was properly denied. The indictment charged every fact essential to a good indictment for murder.

The objection that it fails to charge a deliberate, premeditated, felonious killing, is without foundation. It is in the most approved form and follows long established precedents. [State v. Snell, 78 Mo. 240; State v. Steeley, 65 Mo. 218; State v. Green, 111 Mo. 585; State v. Kindred, page 270, this volume; 3 Chitty's Crim. Law, 752; Wharton's Precedents, 117a and 117b.]

II. Neither can we convict the circuit court of error in refusing a continuance at the April term. It was a matter

largely in its discretion, and little or no diligence was exhibited in the attempt to get the witness Snow.

III.    The court instructed on murder in the first and second degrees, and no exception was taken to the failure of the court to instruct upon any other grade.

The instructions in fact covered every phase of the case, and were very liberal to defendant.    There was really no substantial evidence, which justified the instruction given in behalf of defendant on the plea of insanity.

The objection to the State's instruction that if defendant killed his wife because she was unfaithful to her marriage vows, or killed her because of his jealousy, he was guilty of murder in the first degree, is without merit.    There was ample evidence that this was the reason he killed her.    This identical instruction was approved by this court in State v. Anderson, 98 Mo. loc. cit. 473-474; State v. France, 76 Mo. 681; State v. Holme, 54 Mo. 153; 2 Bish. New Crim. Law, sec. 708; State v. Sawyer, 35 Ind. 80.

IV.    The objection to the impeaching evidence of Clara Hunter was properly overruled.    Defendant's mother was a witness and had testified to going into the house immediately upon defendant's return home and shutting the doors, and saying she was going to take care of no one; that she didn't know what he would do; that she had warned Watson and defendant's wife to go away, and that she had asked her son, what is the matter with you, are you crazy, or what is the matter?

The inference is inevitable that she anticipated the tragedy from what had occurred between herself and defendant.    She was asked if she didn't tell Clara Hunter immediately after the shooting, in the presence of the dying woman: "That is just what Will said, if ever he saw Mag again he would kill her, and die or go to the pen, and now he has made his word good."    She denied making the statement.

Clara Hunter was a witness and she was asked if defendant's mother made this statement to her and testified that she did. It was competent to impeach the witness as to this statement. She had testified defendant would not kill his wife because he loved her so, and if she made the statement imputed to her she knew he had threatened to kill her, and if the jury believed the impeaching witness, it would go far to weaken her other testimony.

V. The point that the constable, Watson, assisted the sheriff in his duties about the courthouse after having testified as a witness in the cause is wholly without merit. He did not select or summon any juror, and had no connection whatever with the jury.

Equally groundless is the point that one of the panel of jurors was not a resident of the county. The testimony largely preponderated that he was a citizen of Scott county, had resided at Vanduser, had voted at the spring election in said county, and had expressed his intention to vote that fall at the general election in said county; that he was an old resident of the State.

Counsel has the merit of originality in assigning as error the failure of the court to poll the jury of its own motion without a demand therefor by defendant or his counsel.

It is probably the first time in the history of jury trials in this State that such a contention has arisen. It is not strange, however, that it has never been asserted before, for the reason that there is no merit in it.

VI. Counsel for the State did not transcend the evidence in alluding to the impeaching evidence of the witness Clara Hunter. He repeated her evidence verbatim in commenting upon the evidence of defendant's mother. It was legitimate for that purpose and was employed in that way only.

VII. Upon the merits, the testimony establishes murder in the first degree. It is another case of wife murder, a

class of crimes which has become very common. We have been called upon to consider three cases at this call of the docket, in which unoffending and helpless women have been shot down or butchered without the slightest provocation. The circumstances surrounding the killing are pregnant of a deliberate and premeditated purpose on the part of the prisoner to shoot his wife. She reckoned well when she declined to go after her clothing without the protection of an officer of the law.

She understood all-too-well the malignity of the defendant's nature. The cowardly and brutal shot in the back of the fleeing, unoffending woman, the use of the deadly weapon, the opportunity to brood over her leaving him, the preparation of the gun, the significant conduct of his mother running into the house and closing the door in anticipation of the shooting, all combine to dissolve every doubt that the crime is one of murder in the first degree, and the jury properly responded to their duty in so finding.

The case has no mitigating circumstances in it, and as there is no error in the record, the judgment of the circuit court is in all things affirmed, and it is ordered that the sentence of the law be executed.

SHERWOOD and BURGESS, JJ., concur.