# THE STATE v. GEORGE W. BALLANCE, Appellant.

### Division Two, December 10, 1907.

1. **INFORMATION: Murder: "Thereby Giving."** An information which charges that "defendant did give to him," etc., is not defective for failing to use the words "thereby giving."

2. **———: Prosecuting Attorney: Officially Sworn.** It is not necessary that the information charge that the prosecuting attorney was at any time prior thereto duly sworn and took upon himself an oath of office as prosecuting attorney of the county. If the prosecuting attorney alleges that he "upon his own knowledge, information and belief and under his oath of office as such prosecuting attorney, now here informs the court," etc., that is sufficient in that respect.

3. **HOMICIDE: Prosecution: Instruction for Manslaughter.** Where, by defendant's own testimony, there was no personal violence by deceased upon him, and at most only opprobrious and insulting words, no instruction for manslaughter in the fourth degree should be given.

4. **———: Murder in Second Degree: Instruction: Insulting Remarks.** An instruction telling the jury that if defendant shot and killed deceased while defendant was in a violent passion suddenly aroused by opprobrious epithets or abusive language, then such killing was not deliberate, but although such killing was not deliberate, yet if it was done wilfully, premeditatedly and of his malice aforethought, as those terms had already been explained, the killing would be murder in the second degree, was not erroneous, but a correct statement of the law.

5. **———: Insulting Remarks: "Alone."** An instruction telling the jury that "no words or epithets, however opprobrious or insulting, can justify the killing of the party who uses them," correctly states the law. The defendant is not entitled to have the word "alone" inserted after the word "insulting" or anywhere else in the instruction.

6. **———: ———: Justification.** Insulting or opprobrious epithets may arouse the passion to such an extent that if the person to whom they are applied, acting under the heat of passion engendered thereby, kills the one using them, such provocation will reduce the killing to murder in the second degree, but they do not amount to a justification of the killing.

Appeal from Maries Circuit Court.—*Hon. William H. Martin*, Judge.

AFFIRMED.

*Watson & Holmes* and *Joseph J. Crites* for appellant.

(1) The court erred in overruling appellant's motion in arrest of judgment, for the reason that the information is insufficient to support a judgment of conviction. A careful examination of this information discloses the fact that it nowhere shows or alleges any connection whatever between the assault and the mortal wound which it alleges was inflicted upon deceased. It does not allege that the mortal wound was inflicted by or was the result of the assault. The words "thereby giving" to the said deceased or their legal equivalent nowhere appear in this information. Without these words or their legal equivalent no indictment or information for murder is sufficient to support a judgment of conviction. State v. Brown, 168 Mo. 449; State v. Furgerson, 152 Mo. 92; State v. Birks, 199 Mo. 271. It is the inflexible rule in criminal pleading that in all indictments or information for felonies nothing can be left to intendment or implication. State v. Brown, supra; State v. Furgerson, supra; State v. Hagan, 164 Mo. 658; State v. Williams, 184 Mo. 261; State v. Woodward, 191 Mo. 617. (2) The court erred in failing to instruct the jury on manslaughter in the fourth degree. State v. Branstetter, 65 Mo. 149; 1 East's Pleas of the Crown, p. 232; 2 Bish. Crim. Law (6 Ed.), sec. 697; 1 Russ. on Crimes (7 Am. Ed.), p. 580; State v. Holmes, 54 Mo. 153; Young v. State, 11 Humph. 200; Har. & Thomp. Cas. on Self-Defense, p. 474.

*Herbert S. Hadley*, Attorney-General, and *N. T. Gentry*, Assistant Attorney-General, for the State.

(1) The information, which was accompanied by the affidavit of the prosecuting attorney, is sufficient in form and substance. It is an exact copy of one that

has been approved by this court. State v. Burnes, 148 Mo. 171; State v. Scott, 199 Mo. 150. (2) No error was committed by the court in failing to give instructions on manslaughter in the fourth degree, as the evidence for the State tended to prove that the defendant was guilty of murder in the first degree or murder in the second degree, and the evidence for the defendant tended to prove that he acted in self-defense. Under this evidence, therefore, there was no half-way ground, and the defendant could not possibly have been convicted of manslaughter in the fourth degree. But aside from that, the defendant did not ask any instruction on that subject, neither did he, at the time, save his exceptions to the failure of the court to fully instruct the jury on all the law of the case. This failure to save his exceptions at the proper time constituted waiver. State v. Urspruch, 191 Mo. 50; State v. Finley, 193 Mo. 211. (3) No errors were committed in the giving of the instructions, as said instructions are exceedingly favorable to defendant and fairly and fully stated the law to the jury. (4) Where there is substantial evidence tending to show that the defendant is guilty, this court will not usurp the functions of a jury, nor attempt to pass upon the weight of the testimony, but will defer to the finding of the jury, as approved by the trial court. State v. Smith, 190 Mo. 706; State v. Payne, 194 Mo. 442; State v. Groves, 194 Mo. 452; State v. Williams, 186 Mo. 128; State v. Williams, 149 Mo. 496; State v. Swisher, 186 Mo. 8.

GANTT, J.—At the October term, 1905, of the circuit court of Maries county, the prosecuting attorney of said county filed the following information in said court:

207 Sup—39

"State of Missouri, Plaintiff, v. George W. Ballance, defendant.

"Leslie B. Hutchinson, prosecuting attorney within and for the county of Maries and State of Missouri, upon his own knowledge, information and belief and under his oath of office as such prosecuting attorney now here informs the court, that George W. Ballance, at the county of Maries and State of Missouri, on the 22nd day of September A. D. 1905, in and upon one Jasper Copeland then and there being feloniously, wilfully, premeditatedly, deliberately on purpose and of his malice aforethought did make an assault, and with a dangerous and deadly weapon, to-wit, a revolving pistol loaded then and there with gunpowder and leaden balls which he, the said George W. Ballance, in his hands then and there had and held at and against him, the said Jasper Copeland, then and there feloniously, wilfully, premeditatedly, deliberately, on purpose and of his malice aforethought did shoot off and discharge and with the revolving pistol aforesaid, and the leaden balls aforesaid, then and there feloniously, wilfully, premeditatedly, deliberately, on purpose and of his malice aforethought, did shoot, strike and penetrate and wound him, the said Jasper Copeland, in and about a vital part of the body of him, the said Jasper Copeland, giving to him, the said Jasper Copeland, at the said county of Maries and State of Missouri, on the 22nd day of September A. D. 1905, with the dangerous and deadly weapon, to-wit, the revolving pistol aforesaid, and the gunpowder and the leaden balls aforesaid in and upon the left breast of him, the said Jasper Copeland, one mortal wound of the width of about one-half inch and the depth of about eight inches, of which said mortal wound, he, the said Jasper Copeland, at the county of Maries and State of Missouri, on the 22nd day of September A. D. 1905, then and there of the mortal wound aforesaid, instantly died; and so Leslie B.

Hutchinson, prosecuting attorney aforesaid, upon his oath as such prosecuting attorney, and his own knowledge, information and belief aforesaid, does say, that he, the said George W. Ballance him, the said Jasper Copeland, in the manner and by the means aforesaid, feloniously, wilfully, premeditatedly, deliberately, on purpose and of his malice aforethought at the said county of Maries and State of Missouri, on the 22nd day of September A. D. 1905, did kill and murder, against the peace and dignity of the State.

"LESLIE B. HUTCHINSON,
"Prosecuting Attorney.

"Leslie B. Hutchinson, being duly sworn, upon his oath says that the matters and facts stated in the above and foregoing information are true according to his best knowledge, information and belief.

"(SEAL.)            LESLIE B. HUTCHINSON,

"Subscribed and sworn to before me this 2nd day of October, A. D. 1905.

"L. N. HAWKINS, Circuit Clerk."

The defendant was arrested and was duly arraigned on the same day and the case was continued until the April term, 1906. At the April term, 1906, to-wit, August 9, 1906, the defendant was put upon his trial and convicted of murder in the second degree and his punishment assessed at fourteen years in the state penitentiary. And after unsuccessful motions for new trial and in arrest of judgment, the defendant was duly sentenced in accordance with the verdict of the jury and from that sentence he appeals to this court.

The State's evidence tended to prove that the deceased married a daughter of a brother of the defendant, and that the defendant and the deceased were farmers. In the spring of 1905, the defendant rented a farm to the deceased and the latter was to pay one-third of the crops as rent therefor. About a week prior to the day of the homicide, the deceased made arrange-

ments with one Spencer to meet him on this rented place on the 22nd of September, to trade corn for a horse, Spencer desiring to look at the crop of corn before trading. On the 22nd of September, the defendant and his son were in this field cutting corn when the deceased came into the field and walked up near where they were at work. The deceased had been at work that day on another place and in an opposite direction from his house, and in returning to his house passed through this corn field where the defendant was. The deceased had a corn knife with a gunny sack wrapped around it which he was carrying on the elbow of his left arm, and a bunch of grapes in his left hand. Two persons in passing near the said corn field that afternoon heard three pistol shots in the direction of the place where the body of the deceased was afterwards found. Later on in the afternoon Ed. Ballance, who was a brother of the defendant and the father-in-law of the deceased, went over to where the deceased's body was lying and found that the deceased had been shot twice, and was lying on his back. The gunny sack was still wrapped around the corn knife, and both were under the body of the deceased. A bunch of grapes was under his left hand. The ground being soft, there was no difficulty experienced by this witness and Gibson, Hodges and Bede, who came over later, in seeing the tracks along the ground. These tracks led from the place where the deceased entered the field and up close to where the defendant and his son were at work. The deceased's tracks further led past where the defendant was at work and into some corn that was still standing and up to the body of the deceased. Tracks made by the defendant, which were smaller tracks, were also found going from the direction of where he was at work in the corn row, and going in the direction that the deceased was walking. These tracks did not go all the way up to the deceased's body, but turned and came back to the

corn row.  Near where the defendant's tracks turned were found three empty shells and one loaded cartridge, all being the kind used in a thirty-eight caliber pistol.

When Ed. Ballance saw the defendant later in the afternoon, he asked the defendant why he had killed the deceased, to which the defendant replied, "I had to." Ed. Ballance then said, "If you had to, why did you follow him?" The defendant at first denied following him, but afterwards said he did run after him because he was scared.  Dr. H. J. Von Gremp testified that he was acquainted with the deceased and was called to hold a post-mortem examination on the 24th day of September.  The first wound was one on the left side, about two inches above the nipple and six inches from the point of the shoulder.  The ball passed downward an inch or more before passing into the cavity, passing between the third and fourth rib.  The second wound entered on the right side near the center of the hip bone, the ball passing forward.  In the opinion of this physician, the wound that entered on the left side near the heart was fatal, and the deceased probably died within a few minutes.  The evidence further shows that the deceased was a little over six feet tall, while the defendant was not more than five feet and nine inches in height.  James Cisco, who was a member of the coroner's jury, assisted in washing the body of the deceased on the evening of the shooting, and discovered grape juice and grape hulls in the mouth of the deceased.  He also discovered that the teeth and tongue of the deceased looked like he had been eating grapes.  Constable McDaniel testified that he arrested the defendant the day after the shooting and that the defendant had a thirty-eight caliber pistol in his pocket at the time, which pistol was loaded.  About a week before the shooting, the defendant tried to borrow a pistol from John Houtz, he visited Houtz's place, stayed all

night and talked to Houtz about getting his pistol, but Houtz refused to let him have it. The next day Houtz's pistol disappeared, and this was the pistol with which the shooting was done.

The defendant's evidence tended to prove that he and his son were working in the corn field in question on the afternoon of the 22nd day of September, when the deceased came up behind him and said, "What are you God damn sons of bitches doing here?" When the defendant replied that they were cutting corn, the deceased said, "If you God damn sons of bitches don't get out of here, I will kill you both." The defendant's evidence further tended to prove that the deceased drew a corn knife on him, and that the defendant backed off some twenty steps and into some standing corn when he shot deceased in the breast. The deceased turned, and as he turned the defendant fired the second shot. The defendant denied shooting more than twice, but did not explain how he happened to empty from his pistol the three shells and one loaded cartridge near the place where the deceased's body was found. The defendant further proved that the deceased made some threats against the defendant prior to the day of the difficulty.

In rebuttal, the State proved that there were no tracks made by the defendant back into the growing corn.

At the close of the evidence the court of its own motion instructed the jury on murder in the first and second degree, self-defense, threats both communicated and uncommunicated and the credibility of witnesses. And at the request of the defendant, the court gave two instructions. The defendant saved his exceptions to all the instructions given on behalf of the State.

I. The information in this case is assailed as insufficient because it is asserted that it does not allege that the mortal wound was inflicted by or was the re-

sult of the assault and because the words "thereby giv-
ing" are omitted from the information and their legal
equivalent nowhere appears therein, and we are cited
by the learned counsel for the defendant to the cases of
State v. Brown, 168 Mo. 449, and State v. Birks, 199 Mo.
271.  We think this criticism of the information is not
well founded.  It charges in substance that the defend-
ant·on the 22nd of September, 1905, at the county of
Maries and State of Missouri, in and upon one Jasper
Copeland, then and there being, feloniously, wilfully,
premeditatedly, deliberately, on purpose and of his
malice aforethought did make an assault, and a certain
revolving pistol, then and there  loaded with gunpow-
der and leaden balls, which he, the said defendant, in
his hand then and there had and held at and against
him, the said Jasper Copeland, then and there feloni-
ously, wilfully, deliberately, premeditatedly, on purpose
and of his malice aforethought did shoot off and dis-
charge and with the revolving pistol aforesaid and the
leaden balls aforesaid then and there feloniously, wil-
fully, premeditatedly, deliberately, on purpose and of
his malice aforethought did shoot, strike and penetrate
and wound him the said Jasper Copeland in and about
a vital part of the body of him the said Jasper Cope-
land, *giving to him,* the said Jasper Copeland at the
said county of Maries and State of Missouri on the 22d
day of September, 1905, with the dangerous and deadly
weapon, to-wit, the revolving pistol *aforesaid* and the
gunpowder and the leaden balls *aforesaid,* in and upon
the left breast of him the said Jasper Copeland, one
mortal wound of the width of one-half inch and the
depth of eight inches, of which said mortal wound, he
the said Jasper Copeland at the county of Maries and
State of Missouri instantly died.  This information is
distinguishable from the one condemned in State v.
Green, 111 Mo. 585, State v. Williams, 184 Mo. 261, in
that this information clearly charges that the defend-

ant with the leaden balls did *strike, penetrate and wound* the said Jasper Copeland in a vital part of his body. It is also distinguishable from the indictment in State v. Brown, 168 Mo. 452, in that the information in that case wholly omitted the allegation of giving the deceased a mortal wound, whereas this information, as already seen, after alleging that the defendant did strike, penetrate and wound the deceased in a vital part of his body, proceeds to charge that the defendant did give to him the said Jasper Copeland at the county of Maries and State of Missouri on the 22nd day of September, 1905, with the dangerous and deadly weapon, to-wit, the revolving pistol, aforesaid, and the gun powder and leaden balls aforesaid, one mortal wound, etc. Thus using words of similar import to the words, "thereby giving," and for this reason this information is also easily distinguished from the case of State v. Birks, 199 Mo. 271. [State v. Arnewine, 126 Mo. 567; State v. Burns, 148 Mo. 167; State v. Scott, 199 Mo. 150.]

It is next insisted that this information is fatally defective because it does not state in the charging part that Leslie B. Hutchinson was at any time prior thereto duly sworn and took upon himself an oath of office as prosecuting attorney of Maries county. By reference to the information, it will be seen that the prosecuting attorney alleges "that upon his own knowledge, information and belief and under his oath of office as such prosecuting attorney now here informs the court," etc. This was sufficient. It has never been required that the prosecuting attorney or the Attorney-General in presenting an information shall allege his title to his office and his compliance with all the prerequisites to his right to perform its duties. We think there is no merit in this objection to the information and a similar objection made to the conclusion of the information for the same reason must be held unavailing.

II. Error is predicated upon the failure of the circuit court to give an instruction upon manslaughter in the fourth degree. This instruction could only have been based upon the testimony of the defendant and his son and an inspection of that testimony very clearly indicates that there was no lawful or reasonable provocation, that is to say, no personal violence whatever by the deceased upon the defendant, and it is a settled law of this State that mere words, however opprobrious and insulting, do not of themselves constitute lawful or reasonable provocation so as to reduce a homicide from murder to manslaughter. This subject has been so recently reviewed in State v. Gartrell, 171 Mo. 489, that further discussion is deemed unnecessary. The evidence upon the part of the State tended to show that defendant was guilty of murder in the first or second degree and the testimony on the part of the defendant tended to prove that he was acting entirely in self-defense. There was no error in failing to instruct upon manslaughter, even if the court had been requested so to do, or if this record showed any exception to the failure of the court in that regard, which it does not.

III. Instruction number six given by the court of its own motion is alleged as error. That instruction advised the jury that if the defendant shot and killed Copeland, while he, the defendant, was in a violent passion suddenly aroused by opprobrious epithets or abusive language then such killing was not deliberate, but although such killing was not deliberate, yet if it was done wilfully, premeditatedly and of malice aforethought as those terms had been already explained in the other instructions, the killing would be murder in the second degree. This instruction is a correct statement of the law of this State on this subject. [State v. Gartrell, 171 Mo. l. c. 515 to 519.]

IV. Instruction eleven given by the court is also assailed. To understand this instruction it must be

borne in mind that the deceased was shot and killed by the defendant in a field which the deceased had rented from the defendant that year, and in which his corn crop was still standing. The court in this eleventh instruction told the jury that "threats alone will not justify an assault, but if they believe from the evidence that the deceased had before the killing made threats against the defendant, and that at the time of the difficulty he by any act, or said anything which indicated a purpose on his part to then carry said threats into execution by killing the defendant or doing him some great bodily harm, then they would take such threats into consideration together with all the other circumstances in evidence in determining the purpose of the deceased and the reasonableness of the defendant's apprehension, if he had any, of his safety at the time of the killing, but notwithstanding such threats, if any, that deceased had the right to be in the corn field for the transaction and conduct of his affairs, and if while so conducting himself, he did not seek or bring on the difficulty which resulted in his death, but that the defendant was the aggressor, then such threats did not constitute an excuse or justification of the defendant for the killing of Copeland." This instruction is in no way obnoxious to the criticism of defendant's counsel, that it in effect told the jury that the deceased had a right to go into the field and assault the defendant. The language "that he had a right to be in the corn field for the transaction or conduct of his affairs" cannot reasonably be distorted into the meaning ascribed to them by the learned counsel for the defendant. The instruction was entirely proper in the circumstances of the case and in no way unfavorable to the defendant.

V. Instruction number thirteen is challenged. In these words the court instructs the jury "that no words or epithets, however opprobrious or insulting, can justify the killing of the party who uses them." It

is insisted that the word "alone" should have been added after the word "insulting." This instruction correctly declared the law of this State. Insulting or opprobrious epithets may arouse the passion to such an extent that if the person to whom they are applied, acting under the heat of passion engendered thereby, kills his adversary, such provocation will reduce the killing to murder in the second degree, but they do not amount to a justification of the killing of the party who uses them. [State v. Gartrell, 171 Mo. l. c. 516, 517; State v. Gordon, 191 Mo. l. c. 125.]

We have carefully examined all the assignments of error in connection with the record in this case, and are of the opinion that the defendant had a fair and impartial trial and that there is no reversible error in the record and the judgment is affirmed.

*Fox, P. J.,* and *Burgess, J.,* concur.